U.S. DISTRICT COURT
EASTERN DISTRICT-WI
FILED

'09 DEC 14 P2:25

JON W. SANFILIPPO
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

v.

ALARIC L. BOWERS,
also known as Ric Bowers,

        Defendant.

Case No. **09 CR-301**
[T.18 U.S.C. § 1344.]

RANDA

**INFORMATION**

**THE UNITED STATES ATTORNEY CHARGES:**

1. Beginning in approximately March 2008, and continuing thereafter until approximately October 2009, in the State and Eastern District of Wisconsin, and elsewhere,

**ALARIC L. BOWERS,**
also known as Ric Bowers,

knowingly executed and attempted to execute a scheme to defraud Tri City National Bank, which scheme is more fully described below.

2. At all times material:

    a. Tri City National Bank ("Tri City Bank") was a financial institution, the deposits of which were insured by the federal government through the Federal Deposit Insurance Corporation ("FDIC").

b.  The defendant, Alaric L. Bowers was the owner and operator of Preferred Luxury Leasing, LLC, which was an automobile dealership located in Franklin, Wisconsin.

### The Scheme

3. The defendant's scheme to defraud Tri City Bank was essentially as follows:

a.  Beginning in approximately March 2008, Bowers applied for and obtained a series of loans from Tri City Bank to purchase vehicles and finance the operation of his automobile dealership.

b.  To induce Tri City Bank to make these loans, Bowers provided the bank with collateral, including a security interest in the assets of his business, security interests in specific automobiles, and a personal guaranty.

c.  In particular, Bowers signed chattel security agreements on behalf of his business purporting to provided Tri City Bank with a security interest in specific automobiles that Bowers represented were owned by his business. In fact, Bowers had previously sold the vehicles and, therefore, his business did not own the vehicles at the time he signed the chattel security agreements.

d.  Bowers also provided Tri City Bank with an inventory listing the vehicles he claimed were owned by his business and the estimated value of these vehicles. In fact, at the time Bowers provided the inventory to the bank,

2

many of the listed vehicles been sold and were not owned by his business. As a result, the inventory substantially overstated the value of the assets of Bowers' business.

 e. Using a computer terminal at his dealership, Bowers made fraudulent entries to Wisconsin Department of Transportation records to make it appear that he owned vehicles he pledged as collateral to Tri City Bank and to generate false and fraudulent titles for such vehicles.

4. As a result of his scheme, Bowers fraudulently obtained more than $400,000 from Tri City Bank.

5. On or about December 18, 2008, in the State and Eastern District of Wisconsin,

**ALARIC L. BOWERS,**
also known as Ric Bowers,

knowingly executed and attempted to execute his scheme to defraud Tri City Bank by fraudulently obtaining a loan in the amount of $125,000 from the bank on behalf of Preferred Luxury Leasing.

5. To induce the bank to make this loan, Bowers provided to the bank the following false and fraudulent documents:

 a. A Chattel Security Agreement purporting to provide the bank with collateral for the loan in the form of a security interest in three automobiles, including a 2007 Bentley Flying Spur and a 2008 Maserati. Bowers falsely represented that Preferred Luxury Leasing owned these

3

vehicles free of all liens. In fact, Bowers had previously sold both of these automobiles and, therefore, his business did not own them and could not use them as collateral.

      b.     A General Business Security Agreement providing Tri City Bank with a security interest in all of the assets of Preferred Luxury Leasing and an inventory listing the vehicles owned by the business, the value of the vehicles, and the net equity the business had in the vehicles. The inventory indicated that the value of the vehicles owned by the business was $958,685; that the business had an unpaid balance on outstanding loans from Tri City Bank of $385,000; and, therefore, the business had net equity in these vehicles of $573,685. In fact, as Bowers well knew, Preferred Luxury Leasing did not own at least four of the vehicles identified on the inventory. These four vehicles had a combined value of $693,085. As a result, the value of the vehicles listed on the inventory that were actually owned by Preferred Luxury Leasing was no more than $265,600 and, therefore, the business had net equity in those vehicles was no more than negative $119,400.

All in violation of Title 18, United States Code, Section 1344.

 

_____
MICHELLE L. JACOBS
United States Attorney

12/14/2009
Date